Booth:, Chief Justice,
delivered the opinion of the court:
The present case is a tax case and the question at issue is the depreciation of patent rights for the year 1917. Plaintiff purchased United States Patent No. 948603 and Canadian Patent No. 125727 on February 27, 1911.
In computing the excess-profits and income-tax return for the year 1917 plaintiff depreciated its patents in the sum of $12,800, which was one-tenth of the sum stated to have been paid for them, which sum was stated to be $123,000 in cash and stock. Actually it appears that the consideration given for the patents represented an equivalent cash consideration of $110,000, assuming a par value for the .stock given. ..This is purely an assumption, however, as there is no satisfactory evidence of the fair market value of the stock at the time of this transaction. (See Finding II.)
On the tax return, the Commissioner of Internal Revenue allowed as depreciation for the patent $7,687.50, which is tV of the claimed purchase value of $123,000, the patent having sixteen years to run after its acquisition by plaintiff. This resulted in a tax of a total amount of $37,676.30, which amount plaintiff paid under jirotest. This tax was assessed under regulation 62, article 167, which provides as follows:
“In computing a depreciation allowance in the case of a patent * * * the capital sum to be replaced as the cost * * * of the patent * * * or its fair market value as of March 1, 1913, if acquired prior thereto. The allowance should be computed by an apportionment of the cost of the patent or copyright or of its fair market value as of March 1, 1913, over the life of the patent or copyright since its grant, or since its acquisition by the taxpayer, or since March 1,1913, as the case may be.”
*151 Plaintiff now contends that the fair market value of the patents on March 1, 1913, was $300,512, basing this valuation upon a capitalization of the net annual earnings and the future earnings, capitalizing the future earnings at 6 per cent. Plaintiff contends that with this value taken in relation to the life of the patents subsequent to March 1, 1913, to wit, fourteen years, that the depreciation allowed for that year should have been $21,465.14 instead of $7,687.50 allowed by the tax commissioner. Plaintiff claims a refund of $9,286.75 due him by virtue of the $300,512 value of the patents on March 1, 1913. There has been no evidence presented as to the value of the Canadian patent alone, and without proper evidence as to exports to Canada, etc., it is difficult to perceive wherein this patent would be of value to an American manufacturer. Canadian patent laws have a working requirement, and unless the patent has been worked in Canada the same would become forfeited within a certain period of time after its issue. The statute relative to the computation of depreciation for patents is perfectly clear in its use by the Commissioner of Internal Revenue in arriving at the figure of $7,687.50, as the patent had sixteen years to run after its acquisition by plaintiff.
The plaintiff is in error in assuming that the fair market value of the patents on March 1, 1913, was $300,512, for the following reasons:
(a) The original U. S. Patent 948603 had been tendered to the Commissioner of Patents for surrender and the reissue of. this patent petitioned for on the ground that the patent was inoperative, this being in the sense that the invention had not been claimed commensurate with the scope thereof.
The reissue patent was not granted until July 28, 1914, and therefore the only patent owned by plaintiff as of March 1, 1913, was the original U. S. Patent 948603, which plaintiff had tendered for surrender, with the statement that it was inoperative. In this connection note Revised Statutes 4916, the significant portion of which is as follows:
“Whenever any patent is inoperative or invalid, by reason of a defective or insufficient specification, or by reason *152 of the patentee claiming as his own invention or discovery more than he had a right to claim as new, if the error has arisen by inadvertence, accident, or mistake, and without any fraudulent or deceptive intention, the commissioner shall, on the surrender of such patent and the payment of the duty required by law, cause a new patent for the same invention, and in accordance with the corrected specification, to be issued to the patentee, or, in the case of his death or of an assignment of the whole or any undivided part of the original patent, then to his executors, administrators, or assigns, for the unexpired part of the term of the original patent. Such surrender shall take effect upon the issue of the amended patent, * * * but no new matter shall be introduced into the specification, nor in case of a machine patent shall the model or drawings be amended, except each by the other; but when there is neither model nor drawing, amendments may be made upon proof satisfactory to the commissioner that such new matter or amendment was a part of the original invention, and was omitted from the specification by inadvertence, accident, or mistake, as aforesaid.”
We believe that such defective or inoperative patent even if worth $123,000 at the time of its purchase in 1911 would certainly not be worth this amount on March 1, 1913.
Plaintiff also attempted to prove by means of expert witnesses that the reissue patent was several times more valuable than the patent in its original form. This is based on the relative scope of the claims and is purely a matter of opinion. The more proper way of viewing this is that the statutes upon which the reissue of patents is based preclude the introduction of any new matter into the patent, and the invention claimed in the reissue patent can not be any broader than the invention disclosed in the original patent.
(b) The patent rights owned by plaintiff are not basic in character, there being in existence in this country as a publication British Patent 4996 of 1901 which discloses a window regulator of the same basic type as that of the reissue patent and having functions similar to the reissue patent in that it provides for automatic locking and transverse movement of the window to lift the same over the weather rail. As this British patent was cited during the *153 prosecution of the reissue application and the claims of the reissue therefore had to be phrased to avoid the disclosure of the British patent, it stands to reason that the structure disclosed in the British patent could be employed in this country without infringing the claims of the reissue patent, and hence the reissue was not at all basic in character.
In addition, plaintiff makes three types of window regulators and only one of these types, to wit, type D, embodies the transverse movement of the window, to which structure ten of the twelve claims of the reissue patent are directed.
It is clear that in the present instance the usual case exists in which the patent rights represent but one of a number of more or less intangible assets, such as good will, quantity products with consequent low price, etc., upon which a successful business may be built and carried on.
For these reasons the court concludes that the depreciation of $7,687.50 allowed by the Commissioner of Internal Revenue is ample. It follows that the petition must be dismissed. It is so ordered.
Green, Judge; and Moss, Judge, concur.